UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation,

        Plaintiff,

vs.   CASE NO:

R.J.S. CONSULTANTS, INC. d/b/a PRESTIGE
WINDOW & DOOR, INC., a Florida
Corporation; and WILLIAM WEISBERG, an
individual,

        Defendants.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

Mid-Continent Casualty Company ("MCC") sues R.J.S. Consultants, Inc. d/b/a Prestige Window & Door, Inc. ("Prestige") and William Weisberg ("Weisberg") for declaratory relief and to determine its obligations, if any, to pay for a stipulated judgment, and states as follows:

### JURISDICTION AND VENUE

1. This is an action for declaratory and other relief pursuant to 28 U.S.C. §2201 for the purposes of determining an actual controversy between the parties as to the scope of MCC's obligations, if any, to defend and indemnify Prestige for a stipulated judgement in the amount of $1,355,620 arising out of the construction of a home in Palm Beach Gardens, Florida.

2. MCC is an Ohio Corporation, incorporated under the laws of the state of Ohio, with its principal place of business in Tulsa, Oklahoma.

3. Prestige is a Florida Corporation, incorporated under the laws of the state of Florida, with its principal place of business in Miami Gardens, Florida.

4. Weisberg is, upon information and belief, an individual residing in Palm Beach County, Florida.

5. Jurisdiction is proper because there is complete diversity of citizenship between the plaintiff and the defendants and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

6. Venue is proper in the United States District Court for the Southern District of Florida, West Palm Beach Division, because the defendants reside here and the events or omissions giving rise to the claim set forth below occurred here.

## **FACTS**

7. MCC entered into one contract of insurance with Prestige, Policy No. 04-GL-000719835, effective from February 18, 2008 to February 18, 2009 (the "Policy").  A copy of the Policy is attached as Exhibit "A".

8. The Policy contains the following pertinent insuring agreement:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.   Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

            **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A or B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** -Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

3

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

* * *

9. The Policy also contains the following pertinent exclusions:

 **2.** **Exclusions**

  This insurance does not apply to:

* * *

  **b.** **Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** That the insured would have in the absence of the contract or agreement; or

   **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

4

  **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

**j.** **Damage to Property**

"Property damage" to: …

 **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

 **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

**k.** **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

 **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

 **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

5

      **n.**      **Recall Of Products, Work Or Impaired Property**

      Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

      **(1)**    "Your product";

      **(2)**    "Your work"; or

      **(3)**    "Impaired property";

      if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

* * *

10.    The Policy further contains the following pertinent definitions:

**SECTION V – DEFINITIONS**

* * *

    **8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      **b.**    You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

* * *

    **16.**    "Products-completed operations hazard":

      **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

6

      **(1)**    Products that are still in your physical possession; or

      **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

          **(a)**    When all of the work called for in your contract has been completed.

          **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

          **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.**    Does not include "bodily injury" or "property damage" arising out of:

      **(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      **(2)**    The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (**3**)    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

7

  **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21.** "Your product":

  **a.**  Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.**  Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.**  Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.**  Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.**  Includes:

    **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)**  The providing of or failure to provide warnings or instructions.

* * *

11. The Policy also contains the following endorsements:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF [CG 22 94 10 01]**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2**. Exclusions

This insurance does not apply to:

  **l.**  **Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

* * *

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FUNGUS, MILDEW AND MOLD EXCLUSION [ML 12 17 (11 04)]**

This insurance does not apply to:

**1.** "Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold, or resulting allergens;

**2.** Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to

9

>    investigate or assess the presence or effect of any fungus, mildew, mold or resulting allergens; or
>
> **3.**   Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2.**

* * *

12.   At issue in this matter are claims arising out of the construction of a home located at 11759 Elina Court, Palm Beach Gardens, Florida (the "Property").

13.   Weisberg is the owner of the Property.

14.   Pinetree Homes, Inc. ("Pinetree") was hired by Weisberg to construct the Property (the "Project"). Pinetree in turn retained a number of subcontractors to perform work at the Project, including Prestige to perform window and door installation at the Project. A copy of the alleged subcontract agreement between Pinetree and Prestige is attached as Exhibit "B".

15.   The Certificate of Occupancy for the Property was issued on October 26, 2009.

16.   Weisberg sued Pinetree and Prestige, among others, seeking to recover for damages to the Property caused by a number of the claimed construction defects, which allegedly caused water intrusion and other damage to the Property (the "Underlying Action"). A copy of the operative third amended complaint (the "Weisberg Complaint"), filed in the Underlying Action in the Circuit Court of Palm Beach County, Florida, is attached as Exhibit "C".

17.   According to the allegations of the Weisberg Complaint, after Weisberg occupied the Property on October 26, 2009, he allegedly discovered construction defects and deficiencies. The Weisberg Complaint further alleges damage to property was caused by the completed work of, or installed by, Pinetree.

18.   In turn, Pinetree filed a third-party complaint in the Underlying Action against various subcontractors, including Prestige. Pinetree brought suit against Prestige for breach of

contract, common law indemnity and negligence. A copy of the operative seventh amended third party complaint (the "Pinetree third party complaint") is attached as Exhibit "D".

19. MCC previously denied coverage to Prestige under the Policy at issue for the Pinetree third party complaint and the Weisberg Complaint

20. Prestige did not file an answer or response to either the Pinetree third party complaint or the Weisberg Complaint or otherwise appear in the Underlying Action and accordingly a default was entered against Prestige in the Underlying Action based on the allegations of the operative complaints at the time the defaults were entered.

21. Various entities involved in the Underlying Action reached settlements, including Greentek Solutions Corporation d/b/a Prestige Window & Door Installation. Greentek Solutions Corporation purchased Prestige following completion of the Project. Greentek Solutions Corporation settled all claims against it by both Weisberg and Pinetree for $10,000. A copy of the Release is attached as Exhibit "E".

22. Pinetree was defended by Amerisure in the Underlying Action and settled the entire lawsuit based on the fact that the Weisberg loss was a completed operations hazard. A copy of the settlement from the Underlying Action will be obtained during discovery.

23. On May 10, 2016, a stipulated judgment was entered against Prestige and for Weisberg, individually and as assignee of Pinetree, in the amount of $1,355,620, plus pre-judgment interest from June 7, 2011 to the date of the judgment. A copy of the stipulated judgment is attached as Exhibit "F".

24. All conditions precedent to filing this action have either been performed or been waived.

### COUNT I – NO DUTY TO DEFEND PRESTIGE BASED ON THE ALLEGATIONS OF THE WEISBERG COMPLAINT AND PINETREE THIRD PARTY COMPLAINT

25. MCC realleges paragraphs 1 through 24 as paragraph 25 of Count I.

26. Each of the operative complaints in the Underlying Action alleges, or the actual objective facts establish, that the Certificate of Occupancy for the Property was issued on October 26, 2009.

27. On the date the Certificate of Occupancy was issued, MCC no longer insured Prestige.

28. None of the operative complaints allege there was any property damage between February 18, 2008 to February 18, 2009 for which Prestige was legally liable to Weisberg.

29. Accordingly, MCC owed no duty to defend Prestige in the Underlying Action for any complaint that was actually tendered to MCC for a defense.

30. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend Prestige in the Underlying Action.

WHEREFORE, MCC requests this Court to find and declare that MCC has no obligation under the Policy to defend Prestige in the Underlying Action.

### COUNT II – NO DUTY TO INDEMNIFY PRESTIGE FOR ANY OF THE DAMAGES CONTAINED IN THE STIPULATED JUDGMENT THAT ARE NOT COVERED UNDER THE POLICY

31. MCC realleges paragraphs 1 through 24 as paragraph 31 of Count II.

32. Even if MCC breached its duty to defend, which it did not, MCC's duty to indemnify Prestige for the stipulated judgment is limited to paying for damages covered by the Policy.

33. Based upon the damages claimed in the stipulated judgment, the stipulated judgment seeks to recover from MCC damages that are not covered by its policy.

15243405v1 0958843

34. For example, to the extent the damages included in the stipulated judgment are due to the cost to repair and replace Prestige's defective work/defective product or work performed on its behalf with regard to the replacement of the windows and doors themselves, as opposed to damage caused by Prestige's defective work/defective product, such damages do not meet the definition of property damage and therefore not covered under the Policy.

35. In addition, to the extent the damages included in the stipulated judgment did not take place during the MCC policy period, MCC has no duty to indemnify Prestige as MCC's obligation, if any, under the Policy is solely limited to "property damage" that occurs during the policy period, which in this case is between February 18, 2008 and February 18, 2009.

36. Furthermore, to the extent the damages included in the stipulated judgment are excluded from coverage by the contractual liability, damage to property, damage to your product, damage to work performed by subcontractors on your behalf, damage to impaired property or property not physically injured, recall of products, impaired property and fungus, mildew and mold exclusions, MCC has no duty to indemnify Prestige.

37. Examples of excluded damages include, but are not limited to, damages for any property that must be restored, repaired or replaced because Prestige's work was incorrectly performed or for any damages arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold, or resulting allergens.

38. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify Prestige for the damages included in the stipulated judgment.

15243405v1 0958843

WHEREFORE, MCC requests this Court to find and declare that MCC has no obligation under the Policy to indemnify Prestige for any damages in the stipulated judgment that are not covered under the Policy.

### COUNT III– NO DUTY TO INDEMNIFY PRESTIGE FOR THE STIPULATED JUDGMENT AS THE STIPULATED JUDGMENT IS UNREASONABLE AND TAINTED BY COLLUSION AND BAD FAITH

39. MCC realleges paragraphs 1 through 24 as paragraph 39 of Count III.

40. To recover for the stipulated judgment from MCC, Weisberg must prove the stipulated judgment was reasonable and made in good faith.

41. Based upon the actual amount of damages incurred by Weisberg and Prestige's liability defenses in the Underlying Action, the amount of the stipulated judgment was unreasonable and not entered into by the parties with any effort to minimize Prestige's liability.

42. In addition, the stipulated judgment is tainted by bad faith and is the result of collusion between the parties in the Underlying Action as the stipulated judgment contains facts not supported by the evidence developed in the Underlying Action, including but not limited to when the damages actually took place, and is inconsistent with the allegation of the Weisberg Complaint in the Underlying Action even though the original complaint was amended on multiple occasions.

43. In view of the foregoing, MCC is not obligated to indemnify Prestige for the stipulated judgment since the amount of the judgment is unreasonable or it was entered into in bad faith or as a result of fraud and collusion between the parties to the stipulated judgment.

WHEREFORE, MCC requests this Court to find and declare that MCC has no obligation under the Policy to indemnify Prestige for any damages in the stipulated judgment as it is

unreasonable, a product of fraud and the collusion between the parties in the Underlying Action and otherwise tainted by bad faith.

### **COUNT IV– NO DUTY TO INDEMNIFY PRESTIGE FOR THE STIPULATED JUDGEMENT AS IT WAS NOT ALLOCATED BETWEEN COVERED AND UNCOVERED DAMAGES**

44. MCC realleges paragraphs 1 through 24 as paragraph 44 of Count IV.

45. In addition, in order to recover for the stipulated judgment entered against Prestige in the Underlying Action, Weisberg must be able to allocate between covered and uncovered damages.

46. In this case, Weisberg did not and cannot allocate between covered and uncovered damages.

47. For example, the stipulated judgment does not allocate between the damages to defective work as opposed to damage caused by defective work.

48. In addition, the stipulated judgment does not allocate between the damages that occurred between February 18, 2008 and February 18, 2009, if any, and damages that occurred at other times.

49. In addition, the stipulated judgment does not allocate between damages arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold, or resulting allergens and other damages, if any.

50. In view of the foregoing, MCC is not obligated to indemnify Prestige for the stipulated judgment since it was not allocated between covered and uncovered damages and, since the evidence to do so no longer exists, Weisberg cannot do so.

15243405v1 0958843

WHEREFORE, MCC requests this Court to find and declare that MCC has no obligation under the Policy to indemnify Prestige for the stipulated judgment as a result of the failure of the parties to the stipulated judgment to allocate between covered and uncovered damages.

Dated: July 12, 2016.

HINSHAW & CULBERTSON LLP

/s/ *PEDRO E. HERNANDEZ*
**RONALD L. KAMMER**
Florida Bar No. 360589
rkammer@hinshawlaw.com
**PEDRO E. HERNANDEZ**
Florida Bar No. 30365
phernandez@hinshawlaw.com
**NICOLE DI PAULI GOULD**
Florida Bar No. 110363
ndipauligould@hinshawlaw.com
**SAMANTHA S. RHAYEM**
Florida Bar No. 111669
srhayem@hinshawlaw.com
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063

*Attorneys for Mid-Continent Casualty Company*

15243405v1 0958843